IN THE UNITED STATES DISCTRICT COURT
FOR THE TENTH CIRCUIT IN KANSAS

| | | |
|---|---|---|
| **M. WILLIAMS** <br> 613 NE 90th Terr. <br> Kansas City, MO 64155 <br><br> **Plaintiff,** <br><br> v. <br><br><br> **ALLSTATE CLAIMS OFFICE** <br> 6100 Sprint Pkwy. <br> Leawood, KS. 66211 <br><br> **Serve:** General Manager <br> 6100 Sprint Pkwy. <br> Leawood, KS. 66211 <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**I. Preliminary Statement**

1. COMES NOW, Plaintiff, M. Williams, by and through his attorneys of record, Kevin Baldwin, Eric Vernon, Sylvia Hernandez and Robin Koogler of Baldwin & Vernon, and brings this cause of action against Defendant Allstate Claims Office, hereinafter referred to as "Defendant Company." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and costs and attorneys' fees may be awarded pursuant to 42 USC §2000e-5(k) and Federal Rules of Civil Procedure 54, for Defendant's conduct and actions taken against Plaintiff.

**II. Jurisdiction**

2. This action arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC §2000e et seq. (as amended), and the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the Age Discrimination in Employment Act (ADEA) 29 U.S.C. §621, 29 CFR part 1625 & 1626, et seq.,

1

and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA") 42 USCA §12101 et seq.

3. Jurisdiction is invoked pursuant to 28 USC §1343 (4), 42 USC §2000e-5 (f), and 28 U.S.C. 1331.  A Right-to-sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on December 8, 2020. The Right To Sue Letter, including a copy of Plaintiff's original charge of discrimination filed with the EEOC, is attached hereto as exhibit 1 and is hereby incorporated as if fully set forth herein.

4. Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC §2201, §2202, 42 USC §1981a.

5. Costs and attorney's fees may be awarded pursuant to 42 USC §2000e-5(k) and the Federal Rules of Civil Procedure 54 and are requested by Plaintiff.

6. Plaintiff is alleging claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA"), for discrimination based upon race, age, perceived disability and retaliation.

7. The Plaintiff, based upon reasonable belief at this time absent discovery, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive and equitable relief, as well as punitive damages.

**III. Venue**

4. This action properly lies United States Federal Court for the District of Kansas, pursuant to 29 USC §1391(b), because the claim arose in this judicial district, and pursuant to 42 USC §2000e-5(f)(3) and because unlawful employment practices were committed in this judicial

district.

## IV. Parties

5. Plaintiff is a resident of the United States residing at 613 NE 90th Terr. Kansas City, MO 64155.

6. Defendant Allstate Claims Office, hereinafter referred as "Defendant Company," is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 100 regular employees. Defendant Company is a corporation, (containing within its charter the requisite authority to sue and be sued), and does business in this judicial district, doing business at various locations located within Cook County, Kansas, at relevant times referred to herein, and specifically at 6100 Sprint Pkwy. Leawood, KS 66211.  Defendant Company is an employer within the meaning of 42 USC § 2000e *et seq.*, 42 USC § 1981a *et seq.*

7. Prior to filing this Complaint for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission to no avail and exhausted all required administrative procedures prior to filing this Petition for Damages.

## V. Facts Common to All Counts

8. Plaintiff, M. Williams, is a 62-year-old male, who worked for Defendant Company for 23 years.

9. Plaintiff was hired on July 29, 1996 as a Field Adjuster.

10. Plaintiff wrote estimates on damaged or totaled vehicles by visiting car dealerships, tow lots or homes.

11. On designated days, Plaintiff would work "drive-ins" where people could bring their damaged cars.

3

12. Plaintiff would write the estimate, review the estimate with the insured and write checks as required.

13. In 1999, Plaintiff was diagnosed with rheumatoid arthritis.

14. During the first year following his diagnosis, Plaintiff used a significant number of his PTO days as sick days as he adjusted to the effects of RA, the medications and how to pace himself.

15. In spite of Plaintiff's best efforts, he would still have periodic flare-ups that could only be treated with medication and most importantly, rest.

16. During this time period, Plaintiff would have to work all-day drive-ins once every six to eight weeks.

17. The drive-ins would run from 8AM to 4:30PM with a 30-minute break for lunch.

18.  Appointments were scheduled every 30 minutes.

19. If someone was running late, it would run into the next appointment time.

20. It was always a very hectic day and seldom did Plaintiff get his lunch break.

21. Plaintiff had to have his rheumatology doctor write a letter requesting that the day be scheduled so that Plaintiff could get the 30-minute lunch break and a morning and afternoon break of at least 15 minutes, as Plaintiff could not physically keep up the constant pace all day.

22. During 2016, Plaintiff's RA was becoming more difficult to control and was affecting his work performance.

23. Plaintiff's supervisors were checking his work very closely for accuracy on repair times, parts usage, paint times, overall repairability of vehicles (total loss), etc.

24. A typical day started at 7:30 or 8AM and would go until 6:30 or 7PM.

25. Due to the stress, Plaintiff was hospitalized for one week in late October of 2016 because the doctor could not determine the issue.

26. After multiple tests, including a colonoscopy, Plaintiff was diagnosed with ulcerative colitis.

27. The stress, poor diet, and caffeine caused permanent damage to his colon.

28. Plaintiff was in the hospital for one-week and then he was on short-term disability for one month to recover.

29. Plaintiff explained to his supervisor, Mark Schrock, why Plaintiff was sick, how the daily stress had contributed to the ulcerative colitis and that it was going to be another condition in addition to the RA that would have to be managed.

30. After returning to work, Plaintiff was expected to continue to work the same full schedule with no accommodation.

31. Plaintiff's performance was not up to par immediately after his return to work in December of 2016, as Plaintiff continued to struggle with juggling his RA now compounded with UC issues.

32. Plaintiff was returning 1-2 assignments every day that he could not complete.

33. Changes were made in the area and Plaintiff changed supervisors a few times during the next two years.

34. Each time Plaintiff made the supervisor aware that Plaintiff had health issues that were permanent disabilities that would create issues from time to time making it necessary that he miss work in order to recover.

35. In September of 2018, Plaintiff's manager, Jerry DeGrendale, notified Plaintiff that he would be "helping out" the Virtual Loss Team that had just started up in August of 2018.

36. It was phrased as being "temporary."

37. The training was for 2-days.

38. After working for 4-days on the team, Plaintiff was told that they would like Plaintiff to take the position "full-time."

39. Jerry pushed Plaintiff to apply for the position as this would get Plaintiff out of the field which was continuing to be stressful and difficult to complete all the assignments every day.

40. Plaintiff applied and was accepted to the Virtual Loss Team in October of 2016.

41. Plaintiff's manager was James Jackson, Plaintiff was required to download four assignments per day and close four assignments per day.

42. In the beginning, the workload was very manageable.

43. However, weather conditions that winter (2016-2017) made the number of assignments explode.

44. Plaintiff was under constant pressure to "make his numbers" each day as the number of assignments continued to increase.

45. Plaintiff's numbers were going down as the stress increased and caused flare-ups with his RA and UC.

46. All of the other members on the Total Loss Team had been working on the team for some time or were working in the Denver office.

47. The job description included contacting repair shops, contacting customers, running valuations on the vehicle, getting agreements with the customer, getting lienholder information, making arrangements or have the car released and moved, settling with the customer and final payment, and getting the title.

48. Those who worked in the Denver office, were able to get more hands-on training.

49. Plaintiff was required to remain on the phone for extended periods of time.

50. In the fall of 2019, James determined that Plaintiff's numbers were not sufficient for production in this position and put Plaintiff on a Performance Improvement Program (PIP).

51. Plaintiff asked for additional training in order to improve his performance but as a cost-saving measure, this was only offered as a conference call – no in-person training at the Overland Park office was considered.

52. Plaintiff also made James aware of Plaintiff's disability with RA and the UC complications.

53. Our discussions about Plaintiff health issues were not documented as a contributing factor to performance.

54. Plaintiff was told that he would have to meet the goals of 8 assignments per day (4 assignments downloaded and 4 assignments completed) in order to retain his employment with Defendant Company.

55. There was no discussion about alternative positions available in the Overland Park office or Defendant Company in general.

56. Plaintiff was told he would be terminated in 60 days if he did not satisfactorily complete the PIP.

57. In December, there was a change in managers as James moved to a new position and new manager, Jaime Baltzer, took over the team.

58. Plaintiff discussed his health conditions/disabilities and how this would create limitations on what Plaintiff could do on some days.

59. Jaime just said, "ok" and "let me know when you will be out."

60. When Plaintiff would try to discuss health issues causing problems and needing to step out of the office for a few hours, she would pull the conversation back to the work-load that needed to be accomplished and indicate that Plaintiff should try to get back as soon as possible.

61. At the end of 60 days, the PIP was extended for another 60 days.

62. After 45 days, Plaintiff was told that he was not meeting the goals and the file was being sent to Human Resources for review and Plaintiff would get a chance to appeal the process.

63. This was on or about February 17, 2020.

64. One week later, Plaintiff was told the decision had been made to terminate Plaintiff's employment.

65. This was on or about Monday February 24, 2020.

66. Plaintiff was given no chance to appeal or speak with anyone in Human Resources.

67. This message was delivered over the telephone by the new supervisor – Jaime Baltzer.

68. Plaintiff was told to shut down her computer, not to attempt to contact any customers or shops, and pack all of his company equipment and take it to the Overland Park office the next day.

69. Plaintiff called the Human Resources department and found out that his benefits were terminated on February 24, 2020 as well.

70. Before Jaime officially told Plaintiff that he was terminated effective immediately, she asked if Plaintiff had worked that day or taken a PTO day.

71. Plaintiff took his equipment to the Overland Park office on Tuesday, February 25, 2020, and have only had interactions with the Human Resources benefits department at Allstate since that time.

72. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant Company's conduct.

73. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant Company's conduct.

74. Defendant Company and its managers and other employees actively engaged in discrimination against Plaintiff with malice or in reckless indifference to her right to be free from such discrimination under the MHRA.

## VI. Causes of Action

### COUNT I

### AGE DISCRIMINATION
### AGAINST DEFENDANT COMPANY

75. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

76. Plaintiff is an individual subject to the protection of the MHRA based upon the fact that he was over 40 years old at the time of the events alleged herein.

77. Defendant Company's actions, as noted above, constituted discrimination against the Plaintiff in violation of the MHRA.

78. Defendant Company terminated Plaintiff's employment and Plaintiff's age was a motivating factor in the decision to terminate his employment.

79. At the time these actions were taken by Defendant Company, Defendant Company knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

80. Defendant Company's actions were unlawful employment practices in violation of the MHRA.

81. Plaintiff has been damaged by Defendant Company's unlawful employment actions.

## COUNT II

### DISCRIMINATION BASED UPON DISABILITY/PERCEIVED/REGARDED AS DISABELED AGAINST DEFENDANT COMPANY

82. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

83. At the time of the unlawful employment actions, Plaintiff was an individual with a disability and, as such, was a member of the protected group under §213 *et seq*., R.S.MO.

84. Defendant Company perceived Plaintiff as being disabled, and that perception was a motivating factor in the decision to terminate Plaintiff.

85. At all times alleged herein, Plaintiff was an individual with a disability and was capable of performing the essential functions of his job with or without reasonable accommodations.

86. At the time these actions were taken by Defendant Company, Defendant Company knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

87. Defendant Company's actions were unlawful employment practices in violation of the MHRA.

88. Plaintiff has been damaged by Defendant Company's unlawful employment actions.

## COUNT III

### RETALIATION AGAINST DEFENDANT COMPANY

89. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

90. Plaintiff hereby alleges claims of retaliation against Defendant Company.

91. Defendant Company's actions, as noted above, constituted retaliation against Plaintiff in

10

violation of the MHRA.

92. Plaintiff's actions of complaining of what he believed to be acts in violation of the Missouri Human Rights Act as set forth herein was a motivating factor in the Defendant Company's decision to retaliate against him by treating him differently, subjecting him to a hostile work environment, subjecting him to a heightened level of scrutiny, setting him up to fail, and/or terminating him from his employment with Defendant Company.

93. At the time these actions were taken, Defendant Company knew that their actions were unlawful, and Defendant Company's actions were undertaken maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

94. Defendant Company's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of retaliation against the Plaintiff that culminated in his termination.

95. Plaintiff has been damaged by Defendant Company's unlawful employment actions in violation of the MHRA.

## VII. Prayer for Relief

96. Wherefore, Plaintiff prays that this Court:

    a. declare the conduct engaged in by Defendant Company to be in violation of Plaintiff's rights;

    b. enjoin Defendant Allstate Claims Office, and its managers/supervisors from engaging in such conduct;

    c. restore Plaintiff to his rightful position with Allstate Claims Office or, in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

    d.  award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period or front salary and benefits accrual;

    e.  award Plaintiff compensatory, punitive and liquidated damages against Defendant Company;

    f.  award Plaintiff damages for emotional pain and suffering;

    g.  award Plaintiff his costs and attorneys' fees; and

    h.  grant such other relief as it may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

Respectfully submitted,

By: /s/ *Robin Koogler*
Kevin Baldwin, KS Bar No. #18637
Eric Vernon, KS Bar No. #21358
Sylvia Hernandez, KS Bar No. #78914
Robin Koogler, KS Bar No. #78915
**BALDWIN & VERNON**
108 S Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
Robin@bvalaw.net
ATTORNEYS FOR PLAINTIFF