**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-02115-TC-GEB

———————

MICHAEL WILLIAMS,

*Plaintiff*

v.

ALLSTATE CLAIMS OFFICE,

*Defendant*

———————

**MEMORANDUM AND ORDER**

    Michael Williams filed this action against his former employer, Allstate Claims Office, alleging unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* Allstate moved to compel arbitration based on the parties' arbitration agreement. Doc. 17. For the following reasons, Allstate's motion is granted, and this matter is stayed pending the arbitration.[1]

---

[1] Williams filed a motion for leave to amend his complaint to correct a scrivener's error. Doc. 11 at ¶¶ 3, 5. Allstate opposed that motion only on the grounds that "this Court is not the proper forum to adjudicate employment-related disputes relating to Plaintiff's employment with Defendant." Doc. 19 at 1. Regardless, Williams's proposed amended complaint would not alter the analysis in this Memorandum and Order. Williams's motion, Doc. 11, is therefore denied as moot without prejudice to refiling if appropriate after arbitration.

# I

## A

The Federal Arbitration Act, 9 U.S.C §§ 1–16, codifies "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It requires courts to enforce agreements to arbitrate according to their terms. *Id.* For motions to compel arbitration, federal courts apply a summary-judgment-like standard: the moving party bears the burden of showing that there is no genuine issue of material fact about whether the parties agreed to arbitrate their grievances. *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Cf. Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997) (summary judgment). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671–72, 674 (10th Cir. 1998), or unsupported by the record as a whole, *cf. Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The party seeking to compel arbitration bears the burden of presenting evidence that the parties entered an agreement to arbitrate. The relevant facts are those that pertain to contract formation, and generally, courts "should apply ordinary state-law principles that govern the formation of contracts." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## B

Michael Williams was a field adjuster for Allstate for 23 years, writing estimates for damaged cars and reviewing estimates with insured drivers. Doc. 1 at ¶¶ 8–11. In 1999, Williams was diagnosed with rheumatoid arthritis. *Id.* at ¶ 13. Following his diagnosis, Williams found it difficult to manage his arthritis and the hectic days as a field adjuster. *Id.* at ¶¶ 15–22. By 2016, Williams's arthritis was affecting his job performance. *Id.* at ¶ 22. The stress led to his hospitalization for a week, where he was diagnosed with ulcerative colitis. *Id.* at ¶¶ 25–26. After short-term disability leave, he returned to work and was back in the rotation as a field adjuster. *Id.* at ¶¶ 28–30.

Yet Williams struggled to keep up with the pace. Doc. 1 at ¶¶ 31–32. After switching supervisors several times over the following two years, Williams eventually transitioned to the Virtual Loss Team. *Id.* at ¶ 38. At first, he managed. But the demands and stress of the new role exacerbated his arthritis and ulcerative colitis, causing him to fall behind. *Id.* at ¶¶ 44–45. Williams's rheumatoid arthritis and ulcerative colitis flared up at this time, compounding his difficulties. *Id.* at ¶ 45. Williams kept his supervisors informed of his medical conditions. *Id.* at ¶ 52.

By fall 2019, Williams's supervisor determined that Williams's numbers were not meeting requirements and placed him on a Performance Improvement Program (PIP). Doc. 1 at ¶ 54. Under the PIP, Williams had to meet a daily quota to keep his employment. *Id.* at ¶ 54. If he did not satisfactorily complete the PIP, Allstate would terminate him in 60 days. *Id.* at ¶¶ 54–56.

In October 2019, as part of a company-wide roll out, Allstate presented a "Mutual Arbitration Agreement" to Williams for his electronic signature. Doc. 17 at ¶ 3; Doc. 29-1 at ¶¶ 7, 9. Williams, like each of Allstate's over 30,000 employees, received a personalized electronic package. Doc. 29-1 at ¶¶ 9–10. The package contained the arbitration agreement and an e-signature consent form bearing the employee's unique employee number. *Id.* at ¶ 10. Each employee then received an email with a unique hyperlink to his or her own arbitration and e-consent documents. *Id.* at ¶¶ 10, 13. The hyperlinked sites instructed employees to review and sign their documents, which required the viewer to scroll through the entire document and then "Click to Sign." *Id.* at ¶ 14. There was no option to manually enter or override the automatically generated name/signature. *Id.* at ¶ 16. On October 23, 2019, Williams signed the agreement. Doc. 17 at ¶ 3.

Ultimately, Allstate terminated Williams under the PIP. Doc. 1 at ¶¶ 62, 64–65. Williams sought administrative relief from the EEOC. *Id.* at ¶ 7. The EEOC declined to pursue the matter and issued a Notice of Right to Sue. Doc. 1-1 at 1. Having exhausted his administrative remedies, Williams filed the present action on March 2, 2021. *Id.* at ¶ 7.

## C

Allstate moved to compel arbitration based on Williams' 2019 Mutual Arbitration Agreement. Doc. 17-2 at 1–4. Allstate argues that

3

Williams is trying to avoid a valid and enforceable agreement to arbitrate. Doc. 17 at 1. The FAA governs Allstate's motion.

Arbitration is a matter of contract. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Section 2 of the FAA states that a "written provision in … a contract … to settle by arbitration a controversy arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, arbitrators derive their authority to resolve disputes only from the parties' advance agreement to submit any grievances to arbitration. *AT&T*, 475 U.S. at 648–49.

The parties dispute whether there was such advance agreement to arbitrate. Allstate argues that its own signature was not necessary to form a binding agreement to arbitrate; that the offer of continued, at-will employment was sufficient consideration for that agreement; and that Allstate's decision to terminate Williams was not a "claim" subject to the Arbitration Agreement. Doc. 29 at 2, 4.

Williams asks the Court to reject these arguments and, in the alternative, argues that fact issues predominate and require a bifurcated jury trial on validity. Doc. 23 at 11. First, he contends that no binding arbitration agreement exists because Allstate neither signed the Mutual Arbitration Agreement nor presented any evidence of its intent to be bound. Doc. 23 at 1. Second, he argues that the Mutual Arbitration Agreement was illusory for lack of adequate consideration because Allstate terminated him anyway. Doc. 23 at 5–9.

## II

Allstate's motion to compel arbitration is granted. The parties entered into a valid agreement to arbitrate that covers Williams's claims. This suit is stayed pending the results of that arbitration.

### A

Williams claims that the Arbitration Agreement is unenforceable because Allstate did not sign it and did not present evidence demonstrating an intent to be bound. Doc. 23 at 1. These arguments are unavailing.

4

The FAA provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It does not require that writing to be signed. *See Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (noting it is "not necessary … that a party sign the writing containing the arbitration clause"); *see also Bolden v. AT&T Servs., Inc.*, 350 F. Supp. 3d 1029, 1032–33 (D. Kan. 2018). Instead, what matters is whether the parties intended to be bound. *Reimer v. Waldinger Corp.*, 959 P.2d 914, 916 (Kan. 1998) ("The question [of] whether a binding contract was entered into depends on the intention of the parties and is a question of fact.").

To determine whether parties intended to be bound by an alleged contract to arbitrate, courts apply state substantive law. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Kansas law, that means there must be mutual assent or a "meeting of the minds on all the essential terms thereof" between the parties. *Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976). Whether this mutual assent occurred is an objective question, which does not focus "on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient." *Sw. & Assocs., Inc. v. Steven Enters.*, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004) (quoting 1 Williston on Contracts § 4:1, p. 241 (1990)).

The record establishes that both Williams and Allstate intended to be bound by the arbitration agreement. Not only did Williams show assent by electronically signing the Mutual Arbitration Agreement, but his continued employment after signing also constituted a sufficient "outward expression of assent" to form a contract. *See Sw. & Assocs.*, 88 P.3d at 1249; *Hardin*, 465 F.3d at 477–78; *see also Rangel v. Hallmark Cards, Inc.*, No. 10-4003, 2010 WL 781722, at *7 (D. Kan. March 4, 2010) (applying Kansas contract law). For Allstate's part, it indicated its understanding of—and agreement to—the terms by its conduct. The arbitration agreement expressly states: "By issuing this Agreement, Allstate agrees to be bound to its terms without any requirement that it sign this Agreement." Doc. 17-2 at 4. Allstate itself drafted the arbitration agreement, sent it to all employees, Doc. 29-1 at 2, and maintained systematic records of these agreements and signatures, Doc. 29-2 at 2. Taken together, that is sufficient to demonstrate a meeting of the minds.

In his response, Williams tries to cast doubt on his signature and Allstate's record-keeping, citing *Shockley v. Prime Lending*, 929 F.3d 1012, 1016 (8th Cir. 2019). *See* Doc. 23 at 10. Not only is *Shockley* nonbinding here, but it is also factually distinguishable on a material point. There, the Eighth Circuit concluded that an arbitration provision was unenforceable because the record failed to include any information about whether the employees reviewed the company's employee handbook containing the arbitration clause. *Shockley*, 929 F.3d at 1019. Unlike in *Shockley*, Allstate provided an electronic log that tracks the log-in process Williams took to navigate to the e-signature consent form, his acceptance of the terms of said form, his opening and viewing of the Mutual Arbitration Agreement, his clicking to sign the Agreement, and his clicking to accept the Agreement. Doc. 29-2 at 2–3; Doc. 29-1 at ¶¶ 20, 22 (explaining automatic process by which Allstate's third-party software produces this log). Thus, there is a robust record establishing that Williams reviewed and accepted the arbitration provision—including the exact date, times, and the IP address at which he accessed the document. *See* Doc. 29-1; Doc. 29-2 at 2–3. There is no genuine dispute that Williams' signature on the contract is his own or that it insufficiently indicates his intent to be bound. *Reimer*, 959 P.2d at 916.

Williams also argues that Allstate's lack of a countersignature confirms that Allstate did not manifest its own intent to be bound and therefore no contract was formed. Doc. 23 at 5–6. But again, the FAA does not require that arbitration agreements be signed. *Med. Dev. Corp.*, 479 F.2d at 348. Consequently, "[i]t is immaterial whether a defendant's representative signed an arbitration agreement." *Brookins v. Superior Mgmt. Grp., Inc.*, No. 13-2051, 2013 WL 5819706, at *2 (D. Kan. Oct. 29, 2013) (relying on *Med. Dev. Corp.*, 479 F.2d at 348); *Perkins v. Rent-A-Center, Inc.*, No. 04-2019, 2004 WL 1047919, at *3 (D. Kan. May 5, 2004). Again, Allstate's conduct was sufficient here. *See Brookins*, 2013 WL 5819706, at *2.

## B

Williams's second argument—that Allstate's promise to arbitrate was illusory because the Mutual Arbitration Agreement lacked adequate consideration—also fails. The "ordinary state-law principles that govern the formation of contracts" apply here. *Hardin*, 465 F.3d at 475. Under Kansas law, the elements of offer, acceptance, and consideration are necessary to form a valid contract. *Steele*, 552 P.2d at 962. As to sufficient consideration, "a promise must impose a legal obligation on the promisor." *Berryman v. Kmoch*, 559 P.2d 790, 795 (Kan. 1977). If

the consideration is only "an illusory promise, there is no contract." *Id.* (internal citation omitted). Contracts wherein one party can unilaterally cancel or terminate without the other party's consent are considered illusory and are "void for lack of consideration." *Aldrich v. Ford*, 2002 WL 35657807, at *4 (Kan. Ct. App. 2002).

Allstate's decision to terminate him does not constitutes either evidence that the agreement was illusory or a unilateral decision to rescind the agreement. *Contra* Doc. 23 at 6. According to Williams, he was entitled to an arbitration hearing *before* the company could fire him. *Id.* That position is contrary to the agreement's terms:

> **No modification of at-will status.** This Agreement does not create a contract of employment for any duration of time…. Allstate may terminate the employment relationship with you at any time for any reason, with or without prior notice.

Doc. 17-2 at 4. In other words, the agreement did not obligate Allstate to arbitrate with Williams before it terminated him. The arbitration process here was reserved for particular claims, not to serve as a forum to prejudge the merits of Allstate's various employment decisions. *See id.* at 2.

Finally, Williams's argument that his continued employment was inadequate consideration is contrary to controlling law. In *Hardin*, the Tenth Circuit rejected this very argument, concluding that continued employment constituted an employee's acceptance of the terms of a disputed employment agreement. 465 F.3d at 477–78; *see also, e.g.*, *Bolden*, 350 F. Supp. 3d at 1033; *Rangel*, 2010 WL 781722, at *6; *see also Kenney*, 2009 WL 102682, at *3. These cases recognize that continued at-will employment constitutes valid consideration, and Williams has offered no reasoned basis to depart from that conclusion.

## C

The final consideration is whether the present action must be stayed pending the arbitration. Allstate requests a stay. Doc. 17 at 8. And indeed, that is consistent with Section 3 of the FAA: "[T]he court in which [a] suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see*

7

*Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538–39 (10th Cir. 1987). Therefore, the case is stayed pending arbitration.

### III

For the reasons set forth above, Allstate's motion to compel arbitration, Doc. 17, is GRANTED and the suit is stayed pending the outcome of that arbitration. Williams's motion for leave to amend, Doc. 11, is DENIED as moot.

It is so ordered.

Date:  January 14, 2022           s/ Toby Crouse
                                                 Toby Crouse
                                                 United States District Judge